UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 10-17-GWU

JOYCE CROWDER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Joyce Crowder brought this action to obtain judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

    Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

  One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. <u>Id.</u> Accord, <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work.

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Crowder suffered from impairments related to obesity, benign positional vertigo, mild degenerative joint disease of the bilateral knees, diabetes mellitus type II, and pseudo-gout. (Tr. 13). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 16-17). Since the claimant would be able to return to her past relevant work as a medical assistant and receptionist, she could not be considered totally disabled. (Tr. 19).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

In determining that Crowder could return to her past relevant work, the ALJ relied heavily upon the testimony of Vocational Expert Linda Taber. The hypothetical question presented to Taber included an exertional limitation to light level work, restricted from a full range by such non-exertional restrictions as (1) an inability to more than occasionally climb stairs or ramps and kneel; (2) an inability to ever climb ladders and crawl; (3) an inability to more than frequently balance, stoop, and crouch; (4) an inability to perform continuous flexion or extension of the head from side to side; and (5) a need to avoid exposure to full body vibration and to all hazards such as unprotected heights and dangerous machinery. (Tr. 50). In

7

response, Taber testified that the plaintiff's past work as a medical assistant and receptionist could still be performed. (Tr. 60). Therefore, assuming that the vocational factors presented by the ALJ fairly characterized the claimant's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The vocational factors considered by Taber fairly characterized Crowder's condition as required by Varley. Dr. Martin Fritzhand examined the plaintiff and diagnosed exogenous obesity, benign positional vertigo, type II diabetes mellitus, a history of hiatal hernia, hypertension, a history of mitral valve prolapse, and a history of obstructive sleep apnea. (Tr. 496). Dr. Fritzhand opined that the claimant would be able to perform a "mild to moderate" amount of sitting, ambulating, standing, bending, pushing, pulling, lifting and carrying heavy objects. (Id.). The doctor also suggested that some accommodation be made for sporadic dizziness. (Tr. 494). The ALJ's findings were essentially consistent with this opinion.

Dr. Parandhamulu Saranga reviewed the record and opined that Crowder would be able to perform medium level work, restricted from a full range by an inability to ever climb ladders, ropes or scaffolds, an inability to more than occasionally climb ramps or stairs and kneel, and would need to avoid concentrated exposure to vibration and hazards. (Tr. 532-539). The ALJ's findings were essentially compatible with this opinion as well.

Such treating and examining sources as the staff at St. Luke Hospital (Tr. 171-194, 540-544), the St. Luke Sleep Disorder Center (Tr. 195-198), the staff at St. Elizabeth Medical Center (Tr. 199-272, 626-648), the staff at Cardiology Associates (Tr. 273-349), Dr. Gregory Salzman (Tr. 443-458), Dr. Neil de Soyza (Tr. 545-553, 717-720), Dr. Ann Beers (Tr. 602-625, 721-726), the Northern Kentucky Center for Diabetes (Tr. 692-693) and Dr. William Beers (Tr. 706-716) did not identify more severe physical restrictions than those found by the ALJ. Therefore, these opinions do not support Crowder's disability claim.

Dr. Doug Miles, a treating source, opined in July of 2006 that it was difficult for Crowder to work due to her symptoms. (Tr. 351). However, Dr. Miles did not identify specific functional restrictions. The ALJ rejected this opinion because this was a conclusory opinion reserved to the Commissioner under Social Security Ruling 96-5p. (Tr. 18-19). The administrative regulations at 404.1527(e)(1) also indicate that such an opinion is not binding on the administration. Therefore, Dr. Miles's opinion does not support the plaintiff's disability claim.

Crowder argues that the ALJ erred in failing to find that her mental problems were severe. The plaintiff noted that Psychologist James Rosenthal, the administration's own consultative examiner, diagnosed an anxiety disorder and indicated that she would have a "mildly" impaired ability to maintain attention and concentration to complete daily work tasks. (Tr. 503). The court notes that Psychologists Christi Bruening (Tr. 504) and Ilze Sillers (Tr. 518), the non-examining

medical reviewers, each opined that the record did not indicate that the claimant suffered from a "severe" mental impairment.  Even if the ALJ erred, the plaintiff has not presented evidence that this "mild" impairment would preclude performance of her past relevant work.  Therefore, the court finds no error.

Crowder notes that when the vocational expert was asked to consider that her testimony concerning her impairments was credible, she could not identify any work which could still be performed.  (Tr. 51).  The ALJ found that the plaintiff was not credible because the objective evidence of record was insufficient to support the disabling symptoms alleged.  (Tr. 18).  The claimant asserts that this finding was erroneous.

Crowder cites a September, 2004 MRI scan of the right knee showing a probable tear of the posterior to mid aspect of the lateral meniscus, a possible tear of the posterior to mid aspect of the medial meniscus, and mild to moderate tricompartmental osteoarthritic change in support of her claims of disabling arthritic pain.  (Tr. 209).  However, the record indicates that despite these findings, the plaintiff continued working for two more years, only leaving her job in September of 2006.  (Tr. 34).  The claimant also notes that a September, 2006 x-ray of her left knee revealed patellar spurs and lateral medial meniscal calcifications which led to a diagnosis of degenerative changes in the left knee.  (Tr. 473).  In May of 2007, an x-ray of the right foot revealed degenerative arthritic changes in the right foot at the MTP joint.  (Tr. 592).  Crowder notes that Dr. William Beers, a specialist in the

treatment of arthritic pain, diagnosed inflammatory arthritis, rheumatoid arthritis and osteoarthritis in the knee, as well as arthritis in the right thumb, erosion of the right wrist and chondrocalcinosis in both knees. (Tr. 707-709). However, the physician did not impose more severe functional limitations than those found by the ALJ. (Tr. 706-716). Dr. Fritzhand's physical examination had revealed no muscle weakness or atrophy with all sensory modalities well-preserved. (Tr. 18, 496). Dr. Neil de Soyza indicated she was walking up to four miles a day in January of 2007. (Tr. 546). In February of 2007, Crowder told James Rosenthal, the psychologist, that three times a week she walked for three miles. (Tr. 18, 501). The ALJ also noted that Dr. Ann Beers, another treating source, reported that the claimant was walking two miles daily in March of 2009. (Tr. 18, 612). These admissions undercut severe physical limitations as a result of arthritic pain.

Crowder also notes that the record indicated that her diabetes was uncontrolled or poorly controlled on occasion. (Tr. 612, 614, 616, 618, 722). However, the ALJ observed that the record revealed no end organ damage due to diabetes. (Tr. 18, 612-625). The ALJ also noted that the treating endocrinologist reported that the plaintiff's difficulties in controlling her diabetes were related to situational stress and that she needed caloric reduction and exercise. (Tr. 18, 612). The undersigned finds no error in the ALJ's findings with regard to this condition.

With regard to her problems with positional vertigo, Crowder notes that treatment records from St. Elizabeth report she was admitted with complaints of

being light-headed and passing out in February of 2006.  (Tr. 203).  A CT scan of the head was within normal limits.  (Tr. 269).  Positional vertigo was diagnosed by Dr. Miles.  (Tr. 351).  The ALJ noted that neurological examination and gait were normal in February of 2007 and she continued to drive occasionally.  (Tr. 18, 27-28, 495).  The claimant told Dr. Fritzhand that her dizziness occurred only once or twice a month for a few seconds and he suggested that sporadic dizziness be accommodated.  (Tr. 494).  Therefore, the court finds that the ALJ dealt properly with this impairment.

The undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 22nd day of September, 2010.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**